IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **THE WASHINGTON POST**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1737 (RMU) |
| | ) | |
| **DEPARTMENT OF HOMELAND SECURITY**, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

The Washington Post ("the Post") respectfully submits this reply in support of its pending motion for a preliminary injunction. In its opposition to the Post's motion, the government advances the unprecedented argument that the Office of the Vice President (and presumably other White House components) can unilaterally decide that records created and maintained by federal agencies must be placed under White House "control" and taken beyond the reach of the Freedom of Information Act ("FOIA"). Such an approach, if adopted, would run counter to the longstanding law of this circuit and eviscerate the FOIA in this context. The Court should reject this radical departure from established norms of accountability and issue the preliminary injunction the Post requests.

**I.  Plaintiff's Motion Does Not Seek a "Final" Injunction**

The government incorrectly asserts that the Post seeks "the ultimate relief sought in this lawsuit." Defendant's Opposition to Plaintiff's Motion for a Preliminary

Injunction ("Def. Opp.") at 8.  The Post squarely addressed that question at the

conclusion of its opening brief:

> Judicial resolution of the Post's request for preliminary relief will not
> resolve all issues raised in the complaint.  Once FOIA processing is
> completed, the Court would retain jurisdiction to review the completeness
> and propriety of the agency's substantive determination of the Post's
> FOIA request.

Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction ("Pl. Mem.")

at 20 n.9 (citation omitted).  The only "merits" issue that the Court need address in

determining whether to grant preliminary relief is the novel "agency records" argument

raised by the agency to summarily dispose of the Post's FOIA request.  If, as we ask, the

Court merely orders the Secret Service to comply with FOIA and process the request, the

propriety of any exemption claims will remain to be litigated.  *See*, *e.g.*, *Ryan v.*

*Department of Justice*, 617 F.2d 781, 788 (D.C. Cir. 1980) (rejecting government's

assertion that requested documents were not "agency records" and remanding for

consideration of the applicability of Exemption 5).

         If anything, it is the government – not the Post – that seeks to litigate the full

merits of this case "at breakneck pace," Def. Opp. at 9, by inviting the Court to rule,

without benefit of the appropriate record, that the requested records are exempt from

disclosure under Exemptions 2, 5, 6 and 7.  *See id*. at 25-28.  The proper procedure for

the litigation of exemption claims is well-established and in conformance with the

familiar requirements of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) – the agency

must present a "detailed justification" for its withholdings and an itemized index of

withheld records.  The expeditious commencement of that procedure, where the Secret

Service would disclose non-exempt material and account for that which it has withheld, is

all that the Post seeks through its motion.  *See Elec. Privacy Info. Ctr. v. DOJ* ("*EPIC*"),

416 F. Supp. 2d 30, 43 (D.D.C. 2006) (granting preliminary injunction and ordering

agency to "produce or identify all responsive records within 20 days" and produce "a

document index and declaration, as specified in [*Vaughn*] . . . within 30 days").

### II.  Plaintiff is Entitled to a Preliminary Injunction

#### A.  The Post will Suffer Irreparable Harm in the Absence of a Preliminary Injunction

The government argues that the Post will not suffer any irreparable injury if the

Secret Service is not immediately ordered to comply with the FOIA, process the Post's

request and disclose responsive, non-exempt records.  The weakness of the government's

position is underscored by its failure to cite, distinguish, or in any way acknowledge this

Court's most relevant discussion of preliminary relief in the context of a FOIA request

warranting expedited processing.  In *EPIC* (cited in our opening brief at 7, 10 n.4), the

Court carefully considered the issue of irreparable harm where, as here, an agency had

purported to grant "expedited processing" of a FOIA request but had failed to process

responsive documents.[1]  The Court first rejected the argument, advanced here by the

---

[1]  Notably, the Court in *EPIC* quickly disposed of a government argument that is echoed in this case: "DOJ accuses [plaintiff] of using the motion for a preliminary injunction, which according to the DOJ seeks 'a version of the ultimate relief' in the case, as a litigation tactic 'to artificially accelerate the proceedings in this case.'" 416 F. Supp. 2d at 35 (citation omitted).  The Court found that argument "unavailing," noting that "[o]n numerous occasions, federal courts have entertained motions for a preliminary injunction in FOIA cases and, when appropriate, have granted such motions."  *Id*. (citations omitted).

Secret Service, that there is no loss of the statutory right to expedited processing when the

agency "has granted plaintiff's request for expedition," Def. Opp. at 12.[2]

> DOJ insists that [plaintiff] will suffer no harm if the court were to deny
> [plaintiff]'s motion for a preliminary injunction because DOJ has already
> afforded [plaintiff] all the relief to which it is entitled.  Because it has
> already expedited [plaintiff]'s FOIA requests by administratively granting
> them expedited status and prioritizing them over other pending requests,
> DOJ argues that [plaintiff] is entitled to "nothing more."  This argument
> stretches the limits of plausibility. [Plaintiff]'s right to expedition is
> certainly not satisfied by DOJ's decision to give priority to [plaintiff]'s
> requests. What matters to [plaintiff] is not how the requests are labeled by
> the agency, but rather when the documents are actually released.  As
> [plaintiff] contends, "merely paying lip service" to [plaintiff]'s statutory
> right does not negate "the harm that results from the agency's failure to
> *actually* expedite its processing." Unless the requests are processed
> without delay, [plaintiff]'s right to expedition will be lost.

*EPIC*, 416 F. Supp. 2d at 41 (emphasis in original; citations omitted).

The Court also rejected the assertion, repeated by the government here, that there

is no cognizable harm when there is unwarranted delay in the potential disclosure of

"information vital to [a] current and ongoing debate."  *Id*.

> DOJ's arguments challenging the irreparable nature of the harm sustained
> by [plaintiff] as a result of DOJ's delay is severely undermined by its
> determination that [plaintiff]'s FOIA requests merit expedition.  Such a
> determination necessarily required DOJ to find that there was an "urgency
> to inform the public" about the [subject of plaintiff's requests].  Given this
> concession, the court finds it hard to accept DOJ's current argument that
> disclosure is not urgent and that further delay will not harm [plaintiff].

*Id*. (citation omitted).  Here, the Post's request for expedited processing, which the

Deputy Director of the Secret Service ultimately granted, Exhibit 4 (attached to Pl.

Mem.), was premised upon the need for disclosure of the requested records prior to the

November elections; as the Post noted, "our right to expedited processing will effectively

---

[2]  Demonstrating apparent disdain for the notion that it is obligated to expedite requests
where the statutory standard is met, the agency refers to "expedited processing" as "an
abstract statutory right."  Def. Mem. at 12.

be lost if the requested material is not processed and released prior to the election," Exhibit 3 (attached to Pl. Mem.).  As in *EPIC*, the agency's "irreparable harm" argument "is severely undermined by its [administrative] determination."[3]

Questioning the need for the preliminary relief the Post seeks, the government argues that "[t]here is nothing more for the agency to do," because it has "granted plaintiff's request for expedited processing, and has finally denied plaintiff's request." Def. Opp. At 9 (footnote omitted).  As the Court found in *EPIC*, "[u]nless the request[ is] processed without delay, [the Post]'s right to expedition will be lost."  Despite its assurances to the Post that "we are processing [the] request," Exhibit 2 (attached to Pl. Mem.), and that "the Secret Service . . . has initiated a search for records," Exhibit 4 (attached to Pl. Mem.), the agency in fact never "processed" the request.  *Compare* Declaration of Kathy J. Lyerly, dated September 21, 2006 (Exhibit 7, attached to Pl. Mem.) (describing in detail search conducted for visitor logs in response to CREW's FOIA request), *with* Declaration of Kathy J. Lyerly, dated October 13, 2006 (attached to Def. Opp.) (no discussion of search for responsive records).  Instead, the agency summarily refused to process the request, asserting that the visitor logs "are not agency

_____

[3]  Mischaracterizing the administrative record, the government says, "it is extraordinary that a newspaper of national prominence would imply that its objective in seeking these records is to influence the Congressional elections, and that the value of the information after the elections falls to zero."  Def. Opp. at 14.  First, the Post has never suggested, even implicitly, that its "objective . . . is to influence the Congressional elections."  Rather, the Post asserted that there is "a clear nexus between the activities of the Vice President and his staff – particularly as they relate to lobbying and ethics issues – and the issues that voters will be considering when they go to the polls in November."  Exhibit 3 (attached to Pl. Mem.).  The agency conceded that there was, indeed, an "urgency to inform the public" about those issues.  Nor has the Post suggested that "the value of the information after the elections falls to zero."  The relevant legal issue involves "urgency," and we reject the notion that the need for information is either urgent or non-existent.

records subject to the FOIA."  As we demonstrate below, that claim is patently wrong and, under the guise of a "final" decision, effectively deprives the Post of its uncontested right to expedited processing.

### B. The Post has Demonstrated it is Likely to Prevail on the Merits

The government next argues that preliminary relief is inappropriate because "the records sought are not 'agency records' subject to FOIA," and that the Post thus "cannot prevail on the merits of its claim."  Def. Opp. at 14.  If anything, defendant's opposition to the Post's motion *supports* the showing that the Post has already made that the disputed records are indisputably "agency records" and that it can easily prevail on the merits of that issue.[4]

As an initial matter, it is remarkable that the government's brief attempts to sweep under the rug the most salient fact relevant to the "agency records" status of the Secret Service visitor logs requested by the Post.  As we have documented, on the same day that the Secret Service was asserting to the Post that it "lack[ed] the authority" to release the requested records, it was disclosing virtually identical records to another party.  Pl. Mem. at 7; Exhibit 7 (attached thereto).  Indeed, both *before and after* its receipt of the Post's FOIA request on June 12, 2006, the agency released visitor logs to other parties pursuant

---

[4]  The agency attempts to insert into the litigation of the pending preliminary injunction motion the "merits" of the ultimate issue that needs to be addressed in this case – whether any of FOIA's nine specific exemptions apply to the Secret Service records sought by the Post.  *See* Def. Opp. at 25-28.  As we discuss, *infra*, the availability of those exemption claims severely undercuts the government's dire warnings about the consequences of treating the Secret Service visitor logs at issue in this case as "agency records."  At this stage of the proceedings, however, adjudication of exemption claims is not ripe, as there is no indication that the Secret Service has even conducted a search for responsive records, let alone reviewed the material to assess the propriety of disclosure.

to FOIA requests.  *Id*. at 8; Exhibit 8 (attached thereto).  The government's discussion of

that fact, in its entirety (and in a footnote), is as follows:

> That certain access records have been voluntarily released, by
> governmental entities other than [Office of the Vice President], to parties
> in other cases, *see*, *Judicial Watch v. United States Secret Service*, 06-
> CV-310 (D.D.C.); *Democratic National Committee* ("*DNC*") *v. United
> States Secret Service*, 06- CV-842 (D.D.C.); *Citizens for Responsibility
> and Ethics in Washington* ("*CREW*") *v. Department of Homeland
> Security*, 06-CV-883 (D.D.C.), does not demonstrate that the records at
> issue in this case should be released.  The Secret Service was authorized to
> release records to the litigants in the Judicial Watch, DNC and CREW
> cases, which it is entitled to do as a discretionary matter.

Def. Opp. at 14 n.5.

Given that "[t]he burden is on the agency to demonstrate, not the requester to

disprove, that the materials sought are not 'agency records,'" *United States Dep't of

Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989) (citations omitted), the

government's failure to explain adequately (with appropriate supporting evidence) its

prior disclosures of visitor logs underscores its inability to sustain its burden.[5]  Rather

than address this dispositive fact, the government instead raises several issues that are

either irrelevant or not supported by the record.  We address these in turn:

1.  **The records "were not created by the Secret Service."**  Def. Opp. at 16 n. 6.

This is true, the government asserts, because the Office of the Vice President "spurs the

generation" of the records and "provides the information that serves as the core" of the

---

[5]  While the movant "carries the burden of persuasion" on its entitlement to preliminary
relief, *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam), that burden does
not extend to all issues.  As the Supreme Court has held, it is "entirely sensible to burden
the party more likely to have information relevant to the facts about [the matter at issue]
with the obligation to demonstrate [those] facts . . ."  *Concrete Pipe & Prods. v. Constr.
Laborers Pension Trust*, 508 U.S. 602, 626 (1993).  Here, the agency is clearly "more
likely to have information relevant to the facts" concerning the "agency records" issue,
yet has failed to put forward *any* facts about its prior disclosure of visitor logs.

records.  *Id*.  If that analysis is correct, then very few of the records commonly understood to be "created" by federal agencies would be subject to FOIA.  Citizens "spur[] the generation" of records when they file complaints that result in the preparation of an Inspector General's report, *see*, *e.g.*, *Nat'l Ass'n of Crim. Def. Lawyers v. United States DOJ*, 182 F.3d 981 (D.C. Cir. 1999) (IG reports obtained under FOIA); and informants "provide[] the information that serves as the core" of many law enforcement records, *see*, *e.g.*, *United States DOJ v. Landano*, 508 U.S. 165 (1993) (files containing informant information subject to FOIA).  The government's novel assertion, if adopted, would remove millions of government documents from FOIA's coverage.  It has no support in any caselaw, and defendant does not cite any.

      2.  **The records "are created subject to an understanding that they are under the OVP's control."**  Def. Opp. at 17.  The government contends that there is an "understanding" between the Secret Service and the Vice President's office that the records at issue in this case are "controlled" by the latter.  This "understanding" is premised on the fact that the OVP has "an on-going interest in the records."  *Id*. at 2. This extraordinary assertion – that the OVP or other components of the White House can claim an "on-going interest" in agency records and unilaterally remove them from the reach of FOIA – runs directly counter to established law.  The D.C. Circuit has held that "depending on its general nature and functions, *a particular unit is either an agency or it is not*.  Once a unit is found to be an agency, this determination will not vary according to its specific function in each individual case."  *Ryan*, 617 F.2d at 788 (emphasis added). As the court explained,

> [i]n many different areas the President has a choice between using his staff
> to perform a function and using an agency to perform it.  While not always

8

> substantively significant, these choices are often unavoidably significant for FOIA purposes, because the Act defines agencies as subject to disclosure and presidential staff as exempt. To redraw this statutory line in a different manner, based on complex functional considerations, would strain the language of the Act and present much greater complexity in litigation.

*Id.* at 789. *See also Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1118 (D.C. Cir. 2004) ("The court has long recognized that the organization of governmental functions is of significance for the purposes of FOIA.") (citing *Ryan*); *Meyer v. Bush*, 981 F.2d 1288, 1292 n.2 (D.C. Cir. 1993) (noting that the D.C. Circuit "rejected [an] on-again, off-again approach to FOIA in *Ryan*"). While the OVP might prefer to have White House protective functions performed by a non-agency entity, such is not the case. The Secret Service is indisputably an "agency," and regardless of any "on-going interest" that OVP might have in the agency's records, they remain subject to FOIA.[6]

     3. **The records "are almost wholly irrelevant to the operation of the Secret Service."** Def. Opp. at 18. First of all, there is no "relevance" test for agency records, and the government does not cite any supporting authority for this contention. In any event, the government concedes, as it must, that the Secret Service "uses the information . . . to run its criminal background checks . . . and then to verify . . . that the visitor has been cleared to enter the White House." *Id.* The records thus, at minimum, provide the

---

[6] In addition to violating FOIA, the OVP's purported "understanding" that it "controls" Secret Service records and directs their disposition also violates 18 U.S.C. § 3056(g), which provides:

> . . . No personnel and operational elements of the United States Secret Service shall report to an individual other than the Director of the United States Secret Service, who shall report directly to the Secretary of Homeland Security without being required to report through any other official of the Department.

only means of accountability with respect to the competence and effectiveness of the Secret Service's protective mission at the White House and the Vice President's residence.  Such information hardly seems "irrelevant" to the agency's operation.

    4.  **"The doctrine of constitutional avoidance" requires a finding that the requested Secret Service records are not "agency records."**  *Id*. at 22.  In urging acceptance of its unprecedented interpretation of the well-established test for "agency records," the government warns that "the Court should take care to construe the statute in such a way so as to avoid a violation of the Constitution."  *Id*. (citation omitted).  Such care, however, does not require anything more than the approach taken by the courts for more than thirty years.  The FOIA's nine exemptions are intended to protect the government against demonstrable and specific harms that might result from public disclosure of particular information.  With respect to the "potential for interference with the effective functioning of the presidency and vice presidency," *id*. at 23, Exemption 5 was clearly intended to address such concerns.  "That Congress had the Government's executive privilege specifically in mind in adopting Exemption 5 is clear." *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 150 (1975) (citations omitted).  Indeed, the government's premature attempt to assert various exemption claims with respect to the requested records, Def. Opp. at 25-28, amply demonstrates that the Court will have an opportunity to consider the claimed dangers of disclosure once this case is in an appropriate posture for such an examination.[7]

---

[7]  As the Post has already noted, it is premature to litigate FOIA exemption claims until the Secret Service has conducted a search for responsive records, reviewed the material for release, and filed with the Court a *Vaughn* index and supporting affidavits.

In summary, there can be no real dispute as to the "agency record" status of the Secret Service's visitor logs.  The government seeks to muddy the waters by asserting that some vague "understanding" divests the Secret Service of control over its own records.  Such an arrangement would violate the FOIA, and is contradicted by the undisputed fact that the Secret Service has released visitor logs in response to other FOIA requests, both before and after the Post submitted its request.  This violation of the law can only be remedied by the Court's entry of the requested preliminary injunction.[8]

## C.  The Requested Preliminary Injunction Will Not Injure Other Parties or the Public Interest

Finally, the government asserts that the requested relief would harm both the Vice President and the public, as it would "infringe on [the Vice President's] ability to perform his official functions."  *Id*. at 29.  As we have shown, the FOIA exemptions that the Secret Service will be entitled to claim as this litigation proceeds will fully protect any cognizable governmental interests and prevent the cited harm.  As for the public interest in agency adherence to statutory requirements, the record amply demonstrates that, contrary to the government's claim, the Secret Service has not "abided by the governing statutes."  *Id*.  The public interest requires this Court to enjoin the agency from

---

[8]  In addition to an order directing the Secret Service to process the disputed FOIA request, the Post also seeks an order requiring the agency to preserve the requested records pending resolution of this matter.  Pl. Mem. at 18-19.  The government contends that "those records are being preserved, so no additional preservation order is necessary or appropriate."  Def. Opp. at 12 n.4 (citation omitted).  Despite that claim, there is no indication that the *Secret Service* – the agency subject to FOIA – is preserving the records.  Rather, it appears that the White House and the Office of the Vice President are asserting the sole authority to manage the material.  *See id*. at 9 n.2.  It is thus critical that the Secret Service be directed to *itself* preserve the requested material to ensure that it is available to the Post under FOIA should the Court reject the government's novel arguments.

continuing to evade the clear command of the FOIA and the established law of this circuit.

## **<u>CONCLUSION</u>**

For the foregoing reasons, and those set forth in our opening memorandum, the Post's motion for a preliminary injunction should be granted.  The Post asks that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on this motion at the Court's earliest convenience.

Respectfully submitted,

___/s/_____
DAVID L. SOBEL
D.C. Bar No. 360418

1875 Connecticut Avenue, N.W.
Suite 650
Washington, DC 20009
(202) 246-6180
sobel@att.net

ERIC N. LIEBERMAN
D.C. Bar No. 436331

The Washington Post
1150 15th Street, N.W.
Washington, DC 20071
(202) 334-6017

Counsel for Plaintiff